## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HUGUETTE NICOLE YOUNG, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-20-2935 |
| BRIAN FROSH, *in his official capacity as* *Attorney general of Maryland*, | * | |
| | * | |
| Defendant | * | |
| | *** | |

### MEMORANDUM

On October 14, 2020, the self-represented plaintiff, Huguette Nicole Young, filed a 33-page verified Complaint with 26 pages of attachments, seeking declaratory and injunctive relief. ECF 1.  Plaintiff also filed a motion for leave to proceed in forma pauperis and a motion for a speedy hearing.  ECF 2; ECF 4.

### I.      Background

Plaintiff, who lives in Oregon, is a "long haul truck driver who is currently between jobs." ECF 1 at 10-11.[1]  She challenges Executive Order 20-04-15-01, issued by Maryland Governor Laurence Hogan, Jr. on April 15, 2020.  According to Young, the Executive Order violates her right to free speech under the First Amendment to the Constitution of the United States.

The Executive Order, issued in response to the COVID-19 health crisis, requires individuals to wear face masks in retail establishments, restaurants, and while using public transportation in Maryland.  Plaintiff asserts that the Executive Order violates her First Amendment rights "by literally blocking plaintiff's ability to speak audibly and clearly while

---

[1] Plaintiff also states that she is a "well-established Ph.D. biochemist" and a law school graduate "specializing in Constitutional Law."  *Id.* at 11.

wearing a face mask." ECF 1 at 1-2. According to plaintiff, there is "mounting scientific data showing prolonged face mask use cuts down on oxygen intake," *id.* at 3, and that "Covid-19 is not a pandemic" and is "probably not as deadly of a virus as first thought. . . ." *Id.* And, she claims that "unsanitary" face masks actually "facilitate the spread of COVID-19. . . ." *Id.* at 10. Further, she states that her "right to free speech will be violated . . . in the likely event [her] next trucking job has [her] passing through Maryland because [she] will be required to wear a mask while doing her routine shopping for supplies at Walmart in Maryland." *Id.* As relief, she seeks to enjoin enforcement of the executive order and declare it unconstitutional. *Id.* at 33.

## II.    Discussion

The Complaint must be dismissed because plaintiff lacks standing to raise this broadly stated claim, and the claim is not ripe. Therefore, the claims are not justiciable. And, a finding of nonjusticiability deprives a court of subject matter jurisdiction. *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 412 (4th Cir. 2011); *see Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (stating that federal courts have an independent obligation to determine whether subject matter jurisdiction exists); *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th. Cir. 1998) (a federal court is required, sua sponte, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears"); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Article III of the Federal Constitution limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 488 (2013). "One element of this case-or-controversy requirement" is that a plaintiff must have standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S.Ct. 1540, 1547 (2016) ("Standing to sue is

a doctrine rooted in the traditional understanding of a case or controversy."); *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) ("An essential element" of the case-or-controversy requirement "is that any party who invokes the court's authority must establish standing").

> To establish Article III standing, a plaintiff must satisfy three elements:
>
> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *see Spokeo*, 136 S. Ct. at 1547; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014); *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *see also Thole v. U.S. Bank N.A.*, ___ U.S. ___, 140 S. Ct. 1615, 1618 (2020); *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 200 (4th Cir. 2020). At bottom, these requirements ensure that the plaintiff has "'a personal stake in the outcome of the controversy.'" *Gill v. Whitford*, ___ U.S. ___, 138 S. Ct. 1916, 1929 (2018) (citation omitted).

An injury in fact is the "'[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (alteration in *Spokeo*; citation omitted); *see Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) ("An injury in fact is an indispensable aspect of constitutional standing . . . ."). To satisfy the injury-in-fact requirement, the plaintiff must plausibly allege "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quotation marks and citation omitted); *see Maryland Shall Issue*, 971 F.3d at 210. These subsidiary elements are distinct. *See Spokeo*, 136 S. Ct. at 1548 (opining that concreteness and particularity are "quite different"); *accord Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020).

3

A particularized injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). To be concrete, the injury must be "real and not abstract." *Id.*; *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (requiring the alleged injury to be "distinct and palpable, as opposed to merely abstract").  But, concreteness is not coterminous with tangible economic or physical harm. *See Spokeo*, 136 S. Ct. at 1549. To the contrary, an "injury-in-fact is often predicated on intangible harm," *Baehr*, 953 F.3d at 252, including the invisible wounds inflicted by discrimination. *See Allen v. Wright*, 468 U.S. 737 (1984) (remarking that the stigma of discrimination "accords a basis for standing" to "'those persons who are personally denied equal treatment' by the challenged discriminatory conduct") (citation omitted); *see, e.g.*, *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) (male retiree had standing to challenge gender-based classification in Social Security allocations); *Bostic v. Schaefer*, 760 F.3d 352, 371-72 (4th Cir. 2014) (same-sex couple had standing to challenge state's same-sex marriage ban).

As for the imminence requirement, although it is "'a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes.'" *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 564 n.2). Accordingly, an allegation of threatened injury in the future is sufficient to establish standing only "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Clapper*, 133 S. Ct. at 1147, 1150 n.5). An injury that "relies on a highly attenuated chain of possibilities" does not qualify as "certainly impending." *Clapper*, 568 U.S. at 410.

The "'case or controversy' constraint of Article III" includes principles of standing as well as ripeness, which "presents a 'threshold question [ ] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted).  Like standing, ripeness

is an issue of subject matter jurisdiction. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013); *see Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, 382 F. Supp. 3d 349, 363 (D. Md. 2019) ("*NAACP*") (describing standing and ripeness as "overlapping facets" of subject matter jurisdiction).

As with standing, the ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . ." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). Whereas standing focuses on who can sue, ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)); *see NAACP*, 382 F. Supp. 3d at 363 (noting that standing concerns who may sue, while ripeness pertains to when a party may sue).

Notably, a claim is not ripe for judicial review "'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scoggins*, 718 F.3d at 270 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). In other words, "the ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements' . . . ." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (citations omitted); *see also South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019); *NAACP*, 382 F. Supp. 3d at 370.

The doctrines of ripeness and standing have largely blurred in declaratory judgment actions. *See* 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3532.5 (3d ed. 2018). In *MedImmune*, *Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007), the Supreme Court recognized that "standing and ripeness boil down to the same question" of justiciability. *Id.* at 128 n.8; *accord Susan B. Anthony List*, 573 U.S. at 157 n.5; *see South Carolina*

5

*v. United States*, 912 F.3d at 730; *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006); *see also Capital Associated Indus., Inc. v. Stein*, 283 F. Supp. 3d 374, 380 (M.D.N.C. 2017) (characterizing discussion of standing and ripeness as "one involving 'standing'" in light of *MedImmune* and *Susan B. Anthony List*).

Both ripeness and standing "require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy." *Doe v. Duling*, 782 F.2d 1202, 106 n.2 (4th Cir. 1986). And, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 422 U.S. 289, 298 (1979)).

To be sure, the requirements for ripeness, like those for standing, are "relaxed in First Amendment cases." *Cooksey*, 721 F.3d at 240. "'In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill.'" *Id.* (quoting *Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995)).

Under the ripeness doctrine, the Court considers: "(1) whether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733.

Plaintiff's generally stated assertions identify no particularized harm she has suffered as a result of the executive order she is challenging. Plaintiff lives in Oregon and is currently not employed as a truck driver. The possibility that she may become employed sometime in the future, and that her employment might require her to stop in Maryland, is speculative and insufficient to

establish standing or ripeness.  Accordingly, this case will be dismissed, without prejudice.  The

other pending motions will be denied as moot.

      A separate Order follows.


October 20, 2020                            /s/
Date                                    Ellen L. Hollander
                                       United States District Judge